IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

District Court No.  15-cr-00204-RBJ-1

UNITED STATES OF AMERICA,

             Plaintiff,

v.

1. **BRANDON TYLER HILL**

             Defendant.

---

## DEFENDANT'S MOTION FOR BELOW-GUIIDELINE, DOWNWARD VARIANCE SENTENCE

---

Brandon Tyler Hill ("Mr. Hill"), by and through his Attorney, Scott Poland of Poland and Wheeler, P.C., hereby files this Motion for Below-Guidelines, Downward Variance Sentence pursuant to 18 U.S.C. 3553(a), requesting a sentence of 180 months (15 years), and in support thereof states as follows:

### Introduction

Since *United States v. Booker*, 543 U.S. 220 (2006), the range of sentencing options has been significantly broadened.  See, e.g. *Spears v. United States*,555 U.S. 261 (2009): *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338 (2007); and *Cunningham v. California*, 549 U.S. v. 270 (2007).

This Court should not presume that a within-Guideline sentence is appropriate. *Rita*, 551 U.S. at 351, nor may it put its "thumbs on the scales" in favor of a Guideline

sentence.   "These statements mean that the district court is free to make its own reasonable application of the Section 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines".  *Kimbrough*, 552 U.S. at 113 (Scalia, J. concurring).  A district court must "give respectful consideration to the Guidelines" but is permitted "to tailor the sentence in light of other statutory considerations as well." *Kimbrough*, 552 U.S. at 101 (internal quotations omitted).  After calculating the Guidelines, the court must then turn to an "individualized assessment of Mr. Hill's case based on the facts presented".  *Gall*, 552 U.S. at 50.  The goal at sentencing is to ensure that the sentence imposed is not "greater than necessary" to satisfy Section 3553(a).

When making an individualized assessment sentencing courts are free to categorically disagree with the Guidelines' recommended sentence and may impose a different sentence based upon a contrary view of what is appropriate under Section 3553(a).  This includes the freedom to merely disagree with the Guideline's computations, and the "policy decisions" that are contained in the Guidelines.  *Pepper v. United States*, 131 S. Ct. 1229, 1241 (2011) (holding that, post-Booker, a sentencing court may impose a non-guideline sentence based on a disagreement with the Commission's view's); *Spear v, United States*, 129 S.Ct. 840, 843 (2009) (confirming Kimbrough's holding that courts may vary from Guidelines based solely on categorical disagreement with the Commission's Guideline).

The overarching provision of 18 U.S.C. § 3553 requires that the court impose a sentence that is sufficient, but not greater than necessary to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).  It is true that the court must first correctly calculate the guideline range; however, Mr. Hill maintains that no additional weight or importance

should be given to the advisory guideline range as it is but one of seven sentencing criteria identified under 18 U.S.C. § 3553(a)(2) that the court is required to consider.  Mr. Hill respectfully requests that the Court impose a sentence based on a cumulation of all statutory sentencing factors identified below.

Mr. Hill, age 31, stands before the Court convicted of three counts of Transportation of Child Pornography.  Mr. Hill has pleaded guilty and has accepted full responsibility for the commission of the offenses.  He is cognizant of the victimization resulting from his crime.  He is ashamed of his behavior.  Mr. Hill also acknowledges that his crimes require a lengthy sentence of incarceration.  However, Mr. Hill believes that the sentence of incarceration should be less than that recommended by the government and the probation officer in the Presentence Investigation Report, (PSR).

The statutory range in this case is 15 to 120 years in prison.  The entire range is available to this court.  The advisory guideline range is computed to be life, however, since the statutorily authorized maximum sentences are less than the maximum of the applicable guideline range the guideline range is 1440, (120 years). That range is merely advisory, *United States v. Booker*, 543 U.S. 220 (2005), and the range of sentencing options is broad.. See, e.g. *Spears v. United States*, 555 U.S. 261 (2009): *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007); *Rita v. United States*, 551 U.S. 338 (2007); and *Cunningham v. California*, 549 U.S. v. 270 (2007).

## ARGUMENT

1. **The Guideline is Excessive, Resulting in a Statutory Maximum Recommendation.**

The "starting point" for any federal sentencing analysis is the Guidelines themselves. *Gall*. 552 U.S. at 49. However here, the Guidelines provide little help to the court in tailoring an appropriate sentence for Mr. Hill unless the answer in all child pornography cases is simply "lock him up and throw away the key"; 3553(a) factors be damned. Were it not for the fact that the Guidelines are capped at offense level 43, the Guidelines would recommend an offense level 44. See PSR at paragraph 65. This case perfectly illustrates the unreasonable and excessive approach the Guidelines take in cases of this nature. The history of U.S.S.G. 2G2.1 described in detail later in this motion also bears out this point. For example, it is true Mr. Hill and Ms. Carnahan sent images /videos to each other via Kik messaging. No other distribution of pornographic images occurred, yet the guidelines call for a two-level increase for this. See PSR at paragraph 56. (Note the defense has filed an objection to this increase). Another two-level increase is made for use of a computer to persuade, induce, entice, a minor to engage in sexually explicit conduct or to solicit participation by or with a minor to engage in sexually explicit conduct. See PSR at paragraph 57. Aside from the fact this never happened, and that this increase is also the subject to a defense objection, Mr. Hill and Ms. Carnahan used their cell phones to transfer the images to one another. These reckless increases, and others, demonstrate that the guidelines, in cases of this nature, cannot be relied upon to produce a fair and just sentence.

2. <u>**Lack of Widespread Distribution, Not for profit and the Absence of Other Aggravating Factors**</u>

In many cases involving the production of child pornography, there is additional harm done which magnifies the abuse and victimization of the minor. In many cases, the images and videos that are produced are then uploaded onto a website, a viewer "bulletin

board", social networking sites, or peer-to-peer programs. Many producers, in fact, create websites to ensure wide-spread distribution of their "work". These horrific images are made available worldwide, everlastingly. That did not occur in the case. There is no evidence Mr. Hill distributed the pornographic images of Minor #1 to anyone other than Carnahan. Second, there is no evidence, whatsoever, Mr. Hill profited financially from any of the images produced by Ms. Carnahan of Minor#1. Third, the images do not depict violence, sadistic, or masochistic conduct or acts of penetration. Fourth, there is no information to suggest that there were any additional victims. All of Mr. Hill's biological children with whom he had regular access gave no indication of being sexually abused by him. Fifth, though the nature and plea to the charges by Mr. Hill in the El Paso county case are concerning, Attempted Sexual Assault on a Child, there is no evidence in the instant case that Mr. Hill's conduct spanned more than a few months: deplorable to be sure, but limited in duration. Finally, it could be argued that Mr. Hill's conduct in the instant case was a continuation of the same type of conduct for which he pled guilty in the El Paso County case, broken only by a relatively short period of time.

### 3. A Virtual Life Sentence is Greater than Necessary; 15 years complies with 3553(a)

Both the government and PSR author seek a virtual life sentence for Mr. Hill. The Government promises, per the Plea Agreement, not to request more than 50 years while the PSR author recommends 55 years-660 months.

By way of comparison, had Mr. Hill planned and intentionally killed another human being, his offense level would be 1 point lower than in the present case: offense level 43 rather than 44. Similarly, if Mr. Hill would have committed second-degree murder, or knowingly killed someone, the offense level would be 38, 5 levels lower than in the

current offense and the recommended sentence would be 235-293 months.
Understanding and acknowledging that people who produce, transport, possess or otherwise deal in child pornography are among the most despised individuals in our society, including prison societies, their lack of popularity should not make them unduly suffer at the hands of unreasonable sentencing guideline that produce draconian results. Ultimately, the lack of empirical support for the child pornography guidelines and the general applicability of the enhancements to most if not all cases of this type reflects this societal attitude toward these offenders. Section 6 of this motion traces the tortuous history of these guidelines and their impact on cases such as this.

Fifteen years in prison coupled with an additional decade of supervision, resulting in federal intervention into Mr. Hill's mid-50's, provides a sufficiently severe punishment to promote respect for the law, just punishment, and reflect the very seriousness of the instant offense. Furthermore, a fifteen-year prison sentence, representing the mandatory minimum sentence allowed by law and as agreed to by both parties in the Plea Agreement, reflects Mr. Hill's unique history and characteristics, along with the lack of aggravating factors often found in similar cases that warrant sentences above the mandatory minimum. A detailed analysis of these factors will be discussed below.

4. **Impact of the Plea Agreement**

The Plea Agreement reached in this case deserves a comment or two as it is anticipated the government will file a timely resistance to this motion for a variant sentence arguing that Mr. Hill received the benefit of a favorable plea agreement and thus the court should impose a guideline sentence. Nothing could be further from the truth. The PSR correctly points out that the Plea Agreement allowed Mr. Hill to plead guilty to

3 counts of transportation of child pornography and dismissal of the production counts lowering the minimum mandatory from 25 to 15 years assuming Mr. Hill is found to have had a prior sex offense which would have the effect of increasing the minimum mandatory for both offenses. See PSR at paragraph 118. However, the same Plea Agreement caps the government's position at sentencing at 50 years ignoring all the mitigating circumstance presented in this case. Not surprisingly, the author of the PSR follows the governments lead but adds an additional 5 years to her recommendations requesting a 55-year sentence- a virtual life sentence. Neither entity gives Mr. Hill any consideration for his cooperation with law enforcement during his interview and most importantly that the timely information provided by Mr. Hill enabled law enforcement to immediately locate co-defendant Carnahan and end the reign of terror she was inflicting on her own child. The government's anticipated argument that Ms. Carnahan was coerced by Mr. Hill in committing these horrific acts is challenged by Ms. Carnahan's own admission to law enforcement that she masturbated upon receiving child pornography images from Mr. Hill. If Mr. Hill pushed Ms. Carnahan into committing these horrific acts, it was a gentle push. It is a supreme irony in this case that Ms. Carnahan will be granted a reduced sentence under U.S.S.G. 5K1.1 because of her willingness to cooperate with the government in its case against Mr. Hill despite the fact Mr. Hill has never expressed a desire to proceed to trial and that it was Mr. Hill's cooperation that lead to the arrest and prosecution of Rhiannon Carnahan. Not surprisingly, Mr. Hill receives scant mention let alone credit in the PSR for his assistance to law enforcement or any of the mitigating circumstances. The author of the PSR informs the court that she could not identify any factors that would warrant a departure

from the guidelines. See PSR at Paragraph 130. In addition, the draconian terms of the Plea Agreement required Mr. Hill to surrender all meaningful appellate rights he would otherwise have in exchange for the "benefit" of this agreement. The government's case against Mr. Hill was extremely strong largely due to the extraordinary cooperation Mr. Hill provided to law enforcement when he was first contacted. Yet this cooperation is not reflected in the Plea Agreement aside from the 3-level reduction Mr. Hill is afforded which produces no meaningful reduction in the recommended sentence.

**5.  Forensic Psychosexual Evaluation**

Mr. Hill was examined by John Davis and his staff at Redirecting Sexual Aggression who have extensive training and experience in conducting Mental Health Offense Specific Evaluations. It is noteworthy Mr. Davis was selected by the defense to conduct the Offense Specific Evaluation because of his reputation, at both the State and Federal level, for being fair and impartial; not a hired gun. Mr. Davis has been qualified at both the State and Federal level as an expert in offense specific assessments and treatment. He is SOMB approved and certified.

Mr. Davis' report (hereinafter Davis Report) and curriculum vitae are attached this motion as Attachments A and B respectively.

Davis Report merits this Court's full review, as it provides a comprehensive look at Mr. Hill as it relates to the issues before this court. "The purpose of this evaluation is to assess the nature and scope of any paraphilic behavior exhibited by Mr. Hill, as well as the identification of any related risk factors, level of supervision needs, current treatment needs and amenability". *Id*. at 4. Mr. Hill's initial impression upon Mr. Davis is also

significant.  "His overall presentation was further characterized by guilt and depressive symptomology".  *Id*. at 4.

Mr. Hill's remorse for his actions in this case are well documented in the section of the report titled: Evaluation of Self. "Mr. Hill reported that he is currently struggling with feelings of guilt and depression.  He related that 'I recognize my own depression. At this point I embrace it as my own form of punishment and torment for my actions.  At this moment and for the foreseeable future I don't believe I deserve to move past the depression and guilt… I struggle with a lot of things currently.  Some of them I can't even identify.  Depression, guilt, anger at myself, confusion, trouble concentrating on anything, trouble sleeping and so on'".  *Id*. at 9.

In the Summary, Conclusions and Recommendations of his report Mr. Davis concludes that Mr. Hill used child pornography as a tool to manipulate people into engaging in the most taboo acts he could imagine.  "Rather, he indicates that he used child pornography images only as a 'tool' for inducing and extorting others to engage in the various acts he requested".  *Id*. at 27.  Data from evaluations support the opinion that Mr. Hill may not be sexually interested in children.  *Id.* at 27-28.  We know from the history of this case that most of the taboo behaviors Mr. Hill manipulated people into performing were sexual but not all involved children. But which is worse: Having a deviant sexual interest in very young children or manipulating others into committing unspeakable acts on the very young and innocent for your amusement and gratification. Arguable the later is more deplorable.

Regardless of how the court answers the previous question one thing is clear: Mr. Hill, in addition to receiving significant punishment for his conduct, is in dire need of

treatment.  Mr. Davis concludes his report by stating "{M}r. Hill appears to be amenable

to treatment based on the following factors: admits to having committed an offense,

accepts full responsibility for index offense behavior, acknowledges having issues in

need of therapeutic intervention, verbalizes remorse, guilt and shame, has no history of

supervision or treatment failure, displays no active substance abuse issues, and presents

as willing to participate in and cooperate with sex offense specific treatment intervention

as ordered by the court".  *Id.* at 30.

### 6.  <u>The History of Section 2G2.1</u>

When initially created, Section 2G2.1 had a base offense level of 25.   See

U.S.S.G. 2G2.1 (1987).   A two-level increase was provided if the minor was under

twelve years old.  Thus, as the guidelines stood as initially adopted, the defendant would

have a base offense level of 25 and he would have a two-level increase because the minor

was under twelve years old.

Effective November 1, 1990, the Commission changed the enhancement that had

previously provided for a two-level increase when the minor was under twelve years

old.[1]  See Amendment 324, effective November 1, 1990.  Instead of the two-level

increase, the Commission amended Section 2G2.1 to provide for a four-level increase if

the minor was under twelve years old.  *Id.*  Moreover, if the defendant was a parent,

relative, legal guardian, or otherwise had custody or supervisory care of the minor, an

additional two-level enhancement was provided.  *Id.*

As the basis for the Amendment, the Commission merely stated that "this

amendment revised subsection (b)(1) to provide distinctions for the age of the victim

consistent with Section 2G1.2, and adds subsection (b)(2) to provide an increase for

defendants who abuse a position of trust in exploiting minor children."  *Id.* 2.  Since its

enactment, and presumably based upon an analysis of historical sentencing patterns,

Section 2G1.2 had contained the four and two level enhancements, depending on the age

of the children.  *See* U.S.S.G. Section 2G1.2 (1987).  In contrast, and again presumably

based upon historical sentencing patterns, Section 2G2.1 had only ever had the two-level

enhancement if the minor was under twelve years of age.

Nothing in the Reason for the Amendment indicates that judges had been finding

Section 2G2.1's two-level enhancement too lenient, nor explains why Section 2G2.1

needed to be amended to match Section 2G1.2.  Similarly, the Reason for the

Amendment fails to assert that earlier sentences were too lenient for defendants who had

abused their familial relationships, thereby justifying an additional two-level increase in

such situations.  Rather than relying on study or empirical research, the Commission

simply amended the Guideline with minimal explanation.

Based upon the 1990 Amendments, defendants such as the defendant herein

would now see their total offense level (after acceptance) raised from 29 to 31.

Thus, without any change in the statute, and without any assertion that earlier

sentences were simply too lenient, defendants saw the bottom of their guideline range

increase significantly.  The Commission's sole justification for such a drastic

increase:  "This amendment revises subsection (b)(1) to provide distinctions for the age

of the victim consistent with Section 2G1.2, and adds subsection (b)(2) to provide an

increase for defendants who abuse a position of trust in exploiting minor

children."  Amendment 324.

In 1995, Congress enacted the Sex Crimes Against Children Prevention Act of 1995, Pub. L. 104-71, 109 Stat. 774, directing the Commission to enhance the base offense level by two for violations of 18 U.S.C. Section 2251, and to provide a specific increase of two-levels if a computer was used to transmit the notice of advertisement to the intended recipient or to transport or ship the visual depiction.  In response, the Commission increased Section 2G2.1's base offense level to 27, and added a two-level enhancement if a computer was used to solicit the minor's participation.  See Amendment 537, effective November 1, 1996. The sole reason for these increases was that the Commission was responding to Congressional directives.  Again, no empirical study supports the increase.

On November 30, 1996, Congress amended 18 U.S.C. Section 2251 to increase the maximum penalty to twenty years, and to create a mandatory minimum penalty of ten years, See Child Pornography Prevention Act of 1996, 1997, Pub. L. 104-208.  While this Congressional action increased the statutory penalties for individuals convicted of violating 18 U.S.C. Section 2251, for the next seven years, the Commission added only one enhancement to Section 2G2.1, an enhancement applicable to defendant's case.  See Amendment 592, effective November, 1, 2000 (providing for a two-level enhancement in cases where the perpetrator misrepresented his or her identity).

The Passage of the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (the "Protect Act"), Pub. L. 108-21, and the Commission's reaction to it, changed everything dramatically.  Through the Protect Act, Congress raised both the minimum and maximum penalties for violations of 18 U.S.C. Section 2251, to 15 years and 30 years respectively.  While the Protect Act specifically

12

directed the Commission to make certain changes to certain guidelines.  It did not

command the Commission to make any changes to Section 2G2.1.

Even though the Protect Act did not direct the Commission to make any changes

to Section 2G2.1, the Commission drastically rewrote that guideline.  First, it raised the

base offense level from 27 to 32.  See Amendment 664, effective November 1, 2004.  As

the sole justification for this change, the Commission cites the Protect Act's increase of

the mandatory minimum from ten to fifteen years.  See *Id*., Reasons for Amendment.  In

rationalizing the increase in the base offense level, however, the Commission points out a

fundamental flaw in Section 2G2.1; namely, many of the enhancements will apply in

virtually every case.  *Id.*  ("A base offense level of 32 is appropriate for production

offenses because, combined with the application of several specific offense

characteristics that are expected to apply in almost every production case (e.g., age of

victim), this base offense level will ensure that the 15-year mandatory minimum (25

years) will be met ("by the Chapter Two calculations (in) almost every case.").

In addition to the base offense level increase, the amendment added three specific

offense level characteristics.  First, the Commission added a two-level increase if the

offense involved the commission of a sex act or sexual contact, and a four-level increase

if the offense involved a sex act and conduct described in 18 U.S.C. Section 2241(a) or

(b). *Id.*  Second, the Commission added a two-level enhancement for those individuals

who distributed the pornography.  *Id*.  Finally, the Commission added a four-level

enhancement if the offense involved material portraying sadistic or masochistic images.

*Id.*

13

As the sole justification for these three enhancements, the Commission stated that conduct involving sexual contact, distribution, and sadistic or masochistic images was more serious than production conduct not involving one or more of these actions. *Id.* While such a statement may be true, the Commission failed to analyze: (1) whether the combination of these enhancements with the additional five-level increase in the base offense level created a sentence that was disproportionately high, or (2) whether one or more of these enhancements would apply in nearly every production case, thereby effectively raising the sentence for nearly every production defendant. Indeed, the Commission could just have logically concluded that those defendants who produced pornography without sexual contact (or without distribution, or without sadistic or masochistic images) should receive a reduction from the newly increased base offense level. Such a change would have recognized the distinction between those producers who touch their victims and those who do not (or those who distribute images and those who do not, or those who engage in sadistic and masochistic conduct and those who do not), without creating a de facto statutory maximum guideline range for the majority of pornography production defendants.

Thus, individuals like the defendant would see their guideline range increase to a life sentence in 2004. This increase occurred without empirical study and without the Commission ever concluding that pornography production defendants were receiving extraordinarily light sentences. As a result, because the advice is not grounded or based on expertise, the advice can be afforded les deference by the Court. See *Kimbrough*, 128 S. Ct. At 575.

7. __The Nature and Circumstances of the Offense__

As part of its analysis, the Court must consider the nature of the offense and the history and characteristics of the defendant. See 18 U.S.C. Section 3553(a)(1). An analysis of these factors supports the requested 15-year sentence.

Undoubtedly, Mr. Hill has been convicted of horrendous criminal conduct. His actions deserve significant punishment, and the defense is asking for that punishment. Far from a slap on the wrist, the sentence requested by the defense will keep Mr. Hill in custody until his mid-50's. Such punishment adequately recognizes the seriousness of the instant offense, yet gives hope of sometime getting out of custody in the latter years of his life. Mr. Hill does not dispute most facts as set forth in the Plea Agreement except that he found Ms. Carnahan a willing participant in the commission of these horrendous acts. It is important for the Court to note the following: (1) during the execution of the search warrant on April 21, 2015, Mr. Hill admitted to creating fake personas; (2) admitted to exchanging child pornography with others; (3) provided law enforcement with Rhiannon Carnahan's email and admitted that he sent child pornography to Carnahan; (4) provided information that he believed Carnahan was molesting a child, and; (5) gave investigators access to his Dropbox account.

As noted in the July 12, 2016, RSA Mental Health Sex Offense Specific Evaluation, Mr. Hill reported that he was not interested in child pornography but obtained gratification from his ability to manipulate others into doing what he wants and in this case, it was the production of child pornography. Mr. Hill denied getting sexual gratification from child pornography, but used it as a tool to manipulate others. Despicable conduct to be sure. Contrary to some of the comments made by victims and

victim's representatives attached to the PSR, Mr. Hill would be the last person on earth to suggest that this was a victim-less crime. As a victim of repeated sexual abuse as a child at the hands of his step-mother, Mr. Hill knows better than anyone the permanent damage this conduct has on a child and how filming the event only makes the harm and damage everlasting.  The fact that Minor #1 was very young at the time she was sexually abused can certainly be viewed as aggravating, but on the other hand it is likely she will not remember this abuse because of her young age- different than the situation of children who will always have memories of the abuse.

8. **Mr. Hill's History & Characteristics**

Mr. Hill's personal history is best described in Mr. Davis report.  Raised by a father who was a drug addict and an alcoholic mother he received little guidance from as a youth.  Mr. Hill is himself the best evidence of the devastating impact of sexual abuse on a child.  Raped repeatedly- "on approximately one thousand occasions"- by a demented step-mother between the ages of five and fifteen, Mr. Hill had no understanding of normal and healthy sexual relations. See Davis report at 21.  It is little wonder perverted sex became a tool by which he thought he could control people as he had been controlled by his step-mother during much of his childhood.  His attempt to serve in the armed forces ended when he failed to return for follow-up medical care for injuries sustained in a parachute accident when his parachute did not fully deploy and he suffered a concussion, fractured left leg, fractured toes, fractured ribs and fractured collar bone.  Mr. Hill reports no concerning alcohol or drug usage.   (Mr. Hill's Allocution is Attached as Exhibit D.)

16

9.  **The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, Promote Respect for the Law, to Provide Just Punishment for the Offense Which Includes Vulnerability to Victimization or Abuse in Prison**

As noted earlier in this Motion, Mr. Hill is fully aware of the seriousness of the offenses of conviction and the consequences his actions. He acknowledges that that the victims of his crimes will be forever impacted by his selfishness and immoral conduct and further realizes that the victims of child pornography are re-victimized over and over when the images are downloaded and viewed. As Davis Report reflects, '"In response to being queried about what he thought the impacts of his behavior on the victims might be, Mr. Hill responded that the impacts would be 'completely life altering. For Rhiannon, the same as me. She may not get to see her daughter.' Regarding Jane Doe, Mr. Hill expressed that 'I can't even imagine what she has gone through, the emotional wreck. Her parents knowing. I feel worse about that than the whole police incident… The victim in my current case will be without her mother for an unknown amount of time. I can't imagine the impact that will have on her life. I only hope she is well taken care of… What kind of person does this shit? How could I put a person in this situation? It makes me sick to my stomach… I really don't know how to describe the utter misery I feel. If someone in a similar situation were involved with my daughters, I would have killed them already. Maybe that's what I deserve. Do I deserve to be put in a nice warm cell and be fed by the taxpayers for the next who knows how long? I don't know.' Related to the victims depicted in child pornographic images in general, Mr. Hill related that 'The thing in the back of my mind at the time, I justified by telling myself every image I had was already widely distributed. There is a long list of victims I have messed up. A lot of them are probably older now. There is some pedophile out there watching it

17

right now.  I would have a very difficult time forgiving a person who extended that part

(his own sexual victimization by his step mother) of my life.'"  *Id*. at 18.

Regardless of the number of years or decades he must serve in prison, Mr. Hill's

term of incarceration will assuredly be more punitive than the typical Bureau of Prisons

inmate.  The Bureau recognizes sex offenders as a vulnerable population within a prison

setting.  Sex offenders (*cho mo* is the prison vernacular for child molester) are singled out

and targeted for assault by the general prison population.  To avoid assault they need to

abide to unwritten prison yard rules – stay in your cell, do not use the recreation yard, do

not use the common or television area, shower when the rest of the cell block or pod is in

the recreation yard.  Mr. Hill has already experienced the unrelenting hatred inmates have

towards sex offenders as he was assaulted at the Federal Detention Center in Englewood,

Colorado pending trial for the instant offense.  He was placed in Segregated Housing

Unit (SHU) and then transferred to the Clear Creek County Jail in Georgetown for his

safety.  Fearing for his life and safety will become Mr. Hill's daily routine for many years

to come.  The argument will most assuredly be made by the government that the BOP

takes adequate steps to ensure prisoner's safety and that sex offenders are afforded sex

offender treatment in low level security facilities. The statistics provided below do not

support this premise.

The Bureau of Prisons offers sex offender treatment at the following institutions:

FMC Carswell, FMC Devens, FCI Elkton, FCI Englewood, FCI Marianna, USP Marion,

FCI Petersburg, FCI Seagoville, and FCI Tucson. A review of ten defendants sentenced

in the District of Colorado in the past five years to more than 200 months incarceration

for child pornography offenses confirm that less than half were designated to a BOP

facility which provides sex offender treatment (* designates treatment facility).

| Case Number | Sentence | Designated Institution |
|---|---|---|
| 11-cr-339-WJM | 480 months | FCI Petersburg* |
| 12-cr-325-WJM | 252 months | Medical Center Springfield |
| 12-cr-229-JLK | 480 months | Raleigh RRM |
| 12-cr-279-RBJ | 412 months | USP Marion* |
| 13-cr-81-RBJ | 235 months | FCI LaTuna |
| 13-cr-404-RM | 204 months | FCI LaTuna |
| 14-cr-27-REB | 292 months | FCI Seagoville* |
| 14-cr-484-RBJ | 240 months | FCI Terminal Island |
| 15-cr-245-WJM | 660 months | USP Tucson* |
| 15-cr-245-WJM | 540 months | FCI Dublin |

It is unknown if the defendants not designated to a BOP sex offender treatment

facility are in general population or if they are in the Segregated Housing Unit.  It is not

difficult to imagine that they all are in daily fear of being assaulted or denied

opportunities offered to the typical BOP inmate because of their status as a sex offender.

Courts have found that vulnerability to victimization or abuse in prison is a factor

that warrants a downward departure from the guideline range.  In *U.S. v Parish,* 308 F.3d

1025 (9th Cir. 2002) the Court found that an eight-level departure in a child pornography

case was warranted because the defendant would have "high susceptibility to abuse in

prison" in part because of the nature of the offense.  In *U.S. v Graham,* 83 F.3d 1466,

1481 (D.C. 1996), the Court found that a departure was warranted due to vulnerability to abuse in prison.

Although it is necessary for the Court to impose a harsh punishment which adequately reflects the seriousness of this crime, Mr. Hill maintains that a sentence of incarceration below the advisory guideline range and the sentence recommended by the probation officer is warranted because of the severity of the conditions Mr. Hill will be faced with while in the Bureau of Prisons.

10. **The Need for the Sentence to afford adequate Deterrence to Criminal Conduct, to Protect the Public from Further Crimes of the Defendant, and the Age of Mr. Hill at Time of Release**

Mr. Hill believes that a recommended sentence of 660 months (55 years) provides neither general nor specific deterrence.  Regarding general deterrence, per recent research, imposition of a sentence of this length upon Mr. Hill may not serve as much of a public interest as previously believed.  The U.S. Department of Justice - Office of Justice Programs, National Institute of Justice, website contains a July 2014 article concerning the costs, risks and rewards of crime. The National Institute of Justice article states as, pertinent here: "The certainty of being caught is a vastly more powerful deterrent than the punishment.  Research shows clearly: If criminals think there's only a slim chance they will be caught, the severity of punishment — even draconian punishment — is an ineffective deterrent to crime."  The article further states, "Increasing the severity of punishment does little to deter crime. Laws and policies designed to deter crime are ineffective partly because criminals know little about the sanctions for specific crimes. . .."

In addition to the Sentencing Commission's Report, and the National Institute of Justice's publication, top academic researchers throughout the country have published numerous studies demonstrating that incarceration is not a deterrent to crime. Valerie Wright, Ph.D., Research Analyst at the Sentencing Project stated in a 2010 publication, "Among low-risk offenders, those who spent less time in prison were 4% less likely to recidivate than low-risk offenders who served longer sentences. Thus, when prison sentences are relatively short, offenders are more likely to maintain their ties to family, employers, and their community, all of which promote successful reentry into society. Conversely, when prisoners serve longer sentences they are more likely to become institutionalized, lose pro-social contacts in the community, and become removed from legitimate opportunities, all of which promote recidivism." Deterrence in Criminal Justice: Evaluating Certainty v. Severity of Punishment (2010), available at http://www.sentencingproject.org/ doc/Deterrence%20Briefing%20.pdf.

Should the Court follow the probation officer's recommendation and sentence Mr. Hill to 660 months imprisonment, he will be 78 years old upon release. If he earns no good time he'll be almost 86. If that were the case, the Court would essentially be imposing a life sentence for Mr. Hill. After release he will undergo a lifetime term of supervised release with all the significant restrictions that come with that sentence. Crime is far less common among persons over 40, let alone over 60 or 70 years of age.

Based on the above information, Mr. Hill believes that essentially a sentence of 660 months would have little impact on the purposes of affording either specific or general deterrence and protecting the public from further crimes of Mr. Hill.

**11. Needed Educational or Vocational Training, Medical Care, or other Correctional Treatment in the Most Effective Manner**

21

Davis Report states "Mr. Hill appears to be amenable to treatment based on the following factors: admits to having committed an offense, accepts full responsibility for index offense behavior, acknowledges having issues in need of therapeutic intervention, verbalizes remorse, guilt and shame, has no history of supervision or treatment failure, displays no active substance abuse issues, and presents as willing to participate in and cooperate with any sex offense specific treatment intervention as may be ordered by the Court." See Davis Report at 30.  Mr. Hill appreciates the candor and frankness of the evaluation and acknowledges that he needs intensive mental health and sex offender treatment.

Mr. Hill believes that when analyzing "effective" correctional treatment, the costs of lengthy incarceration should at least be acknowledged.  The U.S. prison population is enormous by world standards – about 1 percent of the nation's entire population – and prisons are costly to operate.  The Presentence Investigation Report states that as of June 16, 2015, the annual cost of incarceration is $30,261.  The costs of incarcerating Mr. Hill for 55 years total $1,684,155.00.  This figure does not account for inflation.  Furthermore, this figure does not account for any medical treatment Mr. Hill may require.  It is to be expected that as Mr. Hill ages he will need medical care and treatment in some form.  Based on projected inflation rates and presumed medical care and treatment, it is not a stretch to assume that the federal government will be spending more than $2,000,000 to incarcerate Mr. Hill.  Although Mr. Hill is not requesting the Court conduct a cost-benefit analysis to determine how long a prison sentence should be, the high cost of incarceration is a factor to consider when fashioning a sentence that is long enough to satisfy all the 18 U.S.C. § 3553 requirements.

12. **The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct**

An analysis of child pornography sentences (this includes Possession of Child Pornography, Receipt of Child Pornography, Production of Child Pornography, Distribution of Child Pornography, and Transportation of Child Pornography) in the District of Colorado from 2011 through May 2016 was conducted which is attached to this Sentencing Memorandum. (Attachment 3)  The analysis focused on the offense of conviction, Total Offense Level, Criminal History Category, Advisory Guideline Range and the sentence imposed.  The results of the analysis are as follows:

- Forty-two sentences for child pornography related offenses were imposed during the period.

- The court imposed a variant sentence under 18 U.S.C. § 3553 in 47% of the cases.

- The average variance was 34% from the bottom of the advisory guideline range.

Although courts may impose a variant sentence for any number of factors identified in 18 U.S.C. § 3553, the above information suggests that courts varied from the draconian child pornography sentences recommended by the guidelines almost 50% of the time.

**Conclusion**

Mr. Hill appears before the court at 31 years of age. Mr. Hill accepts responsibility for his conduct and expresses great remorse for what he has done. If he could undo it, he would. He deserves to be punished.  He understands that but requests that the punishment be fair and measured, not reckless and disproportionate.

WHEREFORE, Mr. Hill respectfully requests that the Court vary below the advisory guideline range and impose a sentence of than 180 months imprisonment per count to run concurrently, followed by a life time term of supervision.  Such a sentence,

given the unique personal history and characteristics of Mr. Hill, would be sufficient, but

not greater than necessary, to achieve the purposes of sentencing as set out in 18 U.S.C. §

3553(a)(2).

Respectfully submitted this 2nd day of December, 2016.

s/Scott T.  Poland
Scott T. Poland, 11473
Attorney for the Defendant
215 S. Wadsworth Blvd., #500
Lakewood, CO  80226
Telephone:(303) 969-8300
Fax: (303) 986-4376
E-mail: scottpoland@qwest office.
net

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2016 I electronically filed the foregoing Defendant's

Sentencing Statement and Motion for Variant Prison Sentence of Fifteen Years with the

Clerk of the Court using the CM/ECF system which will send notification of such filing

to the following:

Alecia Riewerts, A.U.S.A

Brian R. Leedy.

s/Scott T. Poland
 Scott T. Poland, 11473
 Attorney for the Defendant
 215 S. Wadsworth Blvd., #500
 Lakewood, CO  80226
 Telephone:(303) 969-8300
 Fax: (303) 986-4376
 E-mail: scottpoland@qwest office.
 net