Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 9

## EVALUATION OF SELF

Mr. Hill related that "My self image and how I would describe myself to others are not the same thing. I wear a mask for others. Around other people, I am confident, enthusiastic, intelligent, outspoken, humorous, very sociable. When I am alone and in my own head, I am almost the exact opposite. I am always self conscious. I always know that I make the wrong decisions. Sometimes I wear that mask for myself too. That mask is as much my real face as is my real face." Mr. Hill identified success as "the single most motivating factor for almost everything I do. The problem is once I am successful to a certain point, I get bored and move on to something else."

Mr. Hill reported that he is currently struggling with feelings of guilt and depression. He related that "I recognize my own depression. At this point I embrace it as my own form of punishment and torment for my actions. At this moment and for the foreseeable future I don't believe I deserve to move past the depression and guilt... I struggle with a lot of things currently. Some of them I can't even identify. Depression, guilt, anger at myself, confusion, trouble concentrating on anything, trouble sleeping and so on."

Discussing his social skills, Mr. Hill presented that he does not experience any issues related to his communications skills. He indicated that he does not generally express his feelings to others, except to his best friend and in intimate relationships. Mr. Hill indicated that he typically deals with feelings of anger by keeping them to himself. He explained that "with friends and in relationships, I never really got angry. I was angry all the time when I was younger. That went away after the military."

Prior to his arrest in 2014, Mr. Hill reported that his recreational interests centered on indoor soccer, watching television, and playing video games with his best friends. He identified his current interests to involve reading and writing.

## COGNITIVE FUNCTIONING

To estimate Mr. Hill's level of cognitive functioning, he was administered sections of the Shipley including the Abstract Reasoning, Block Design and Vocabulary subtests. Testing suggests that Mr. Hill's overall level of intelligence is in the High Average range, as results reflected average levels of cognitive functioning. Individual Shipley subtests reflect that Mr. Hill's vocabulary was in the lower end of the High Average range. His verbal abstract reasoning was in the Average range. He displayed High Average range visual abstraction abilities when administered the Shipley Block subtest. Mr. Hill's vocabulary was significantly higher than his abstract reasoning, which may suggest organic brain damage or other factors that can impede his abstract reasoning. Visual reasoning was significantly better than his verbal reasoning which may

Mental Health Sex Offense Specific Evaluation
**Re:  Hill, Brandon T.**
Page 10

indicate possible verbal/auditory processing problems.  Mr. Hill scored similarly on the Shipley visual reasoning and vocabulary subtests, indicating equivalent language and visual processing skills.

Significant levels of obsessive ruminations and focus on problems and worries were not described on testing.  Testing suggests an individual who is not reflective or thoughtful, which can limit insight and judgment.  Due to depression and/or a lack of self confidence seen in testing, Mr. Hill may be indecisive and have difficulty with independent decision making.  On testing, Mr. Hill exhibits as cognitively impulsive.  A lack of proper cognitive mediation and/or planning is likely, suggesting an individual who often acts without considering consequences or alternative courses of action.  The racing thoughts and possible flight of ideas reported on testing are likely to interfere with Mr. Hill's cognitive functioning and to cause much distress.  Due to emotional factors or indications of underlying mental confusion, concentration difficulties are probable with Mr. Hill likely to be distractible, preoccupied, and inattentive.  This may result in his missing important environmental cues leading to decreased judgment and coping.

Schizotypal features were not present on testing.  Thinking is goal directed and logical without signs of being vague, illogical, or disorganized.  Mr. Hill was alert and oriented to person, time and place during clinical interviewing.  He completed orientation, registration, attention, recall, and calculation, as well as language, without difficulty on mental status exam.  His speech and language were appropriate and coherent.  Associations were intact.  Affect was within the normal range; mood was stable.  Both short term and long term memory were intact.

## MEDICAL / PSYCIATRIC INDICATIONS

Mr. Hill reported that he suffers from joint injuries in his left knee and both shoulders, as well as hypertension.  He indicated having had two corrective surgeries on his left shoulder in 2010, and noted that his right shoulder and left knee also require corrective surgery.  Mr. Hill reported that he suffers "seizure type attacks" which are very painful in his chest area and during which he is unaware of his surroundings.  He indicated that to date, he has had both an EEG and an echocardiogram in an effort to diagnosis this problem.  Self report is absent any additional history of serious illness.  Mr. Hill reported that he takes Propranolol as prescribed for high blood pressure.

Self-reported history is absent any homicidal ideation.  Mr. Hill reported that he has no history of visual or auditory hallucinations other than having experienced "loud explosion type sounds" when previously taking Zoloft in November 2015, which he discontinued after three or four days.  Self reported history is noted for a suicidal gesture in 2011 and a suicide attempt in 2014.  Regarding the 2011 events, Mr. Hill indicated that he was psychiatrically hospitalized on a

Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 11

seventy-two hour hold and treat order. He explained that following his split with Angel Lucero, "I told her that I was going to take sleeping pills and go to sleep. Angel thought I was going to commit suicide." Mr. Hill described the 2014 attempted suicide by stating that he drove his car into the middle of a field with a hose that he planned to connect to his tail pipe to induce carbon monoxide poisoning. However, he related that he "wasn't comfortable and chickened out. It was kind of cheating, not fair to the people I've hurt." Mr. Hill reported that he has no further or more recent history of suicidal ideation, plans, gestures or attempts.

## MENTAL HEALTH

Results of psychological testing related to self-image reflect that Mr. Hill exhibits with much difficulty maintaining a stable sense of identity and may tend to react in an inconsistent, situational manner. He is likely to feel unsure about what he wants to do and what he wants from life, as he lacks an internal compass to guide his behaviors. He is frequently ambivalent and has difficulty knowing how to react in situations, which causes significant anxiety and can result in erratic, ineffective behavior. Testing reflects poor stress tolerance and difficulty sustaining long term goal directed behavior. On testing, Mr. Hill appraised his own abilities as being exceptional.

Mr. Hill reported that he has been diagnosed with Post Traumatic Stress Disorder, Obsessive Compulsive Disorder and Depression. He indicated having had PTSD since his discharge from the military and reported that he was diagnosed with OCD and Depression six weeks ago by the attending psychiatrist at the detention facility. Mr. Hill reported that "The psychiatrist has tried to get me on meds but I'm not a fan of psych meds. I feel like it's cheating, taking a short cut I don't deserve." Mr. Hill reported that he has no additional history of mental health counseling or evaluation.

Regarding the psychological testing component of the evaluation, Mr. Hill appeared to have read the psychological test items and did not respond randomly. Mr. Hill was unusually open when responding to test items and in sharing his thoughts and feelings. *This may lead to an over reporting of symptoms and, therefore, to a moderate exaggeration of Mr. Hill's true symptoms and clinical patterns. Results reported below are viewed as clinical hypotheses.*

Emotional functioning on testing reflects that Mr. Hill described clinically significant moderate levels of depression with associated feelings of sadness, dejection, hopelessness, helplessness, and discouragement on the MCMI. On short face valid specialized self rating depression scales on the Beck Depression Inventory-II, Mr. Hill reported the presence of severe depression. Severe affective components of depression were reported on this instrument, as Mr. Hill described experiencing a severely depressed mood and strong levels of sadness and dejection, as well as physical signs of depression. Significant and chronic Dysthymic character features

Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 12

were evident on testing, reflecting the presence of pessimism, negativism, and negative self statements.

Severe levels of global anxiety were reported, as Mr. Hill described himself on testing as being so nervous that he can easily become overwhelmed by the stresses and demands of everyday life and feel panicky and threatened. Worry and autonomic arousal may occur. Severe Post Traumatic Stress Disorder symptoms were also endorsed by Mr. Hill on multidimensional assessments of psychopathology. At this level, Mr. Hill's PTSD symptoms are very disruptive to his functioning and are likely to result in impulsive self defeating behavior, impaired judgment, mood swings, and/or behavioral avoidance.

Mr. Hill's overall average scores on anger specific scales did not indicate significant trait anger. On testing, both present angry feelings and pressure to act out in an angry manner were denied. Mr. Hill displays average sensitivity to interpersonal disapproval, social rejection, and criticism. Once anger is consciously experienced, Mr. Hill reported on testing making very strong initial efforts to suppress his anger. After making initial efforts to reduce anger, average amounts of energy are then invested in reducing any remaining conscious anger. He described making average efforts to control acting out once he becomes aware that he is angry. Mr. Hill's tendency to not act out on anger is important since general tendencies to experience angry feelings are reported that could otherwise result in direct anger expression. Mild levels of anger expression and generalized aggressiveness were reported, as above normal impulsivity, direct verbal and physical aggression, and/or indirect anger expression were described on testing.

Testing suggests that Mr. Hill has few guards against his feelings, as he appears to lack the defenses necessary to blunt the impact of anxiety, depression and anger. Impulse control is poor as Mr. Hill appears prone to impulsively acting without forethought. Mr. Hill reported such an extreme energy level on testing that much scattered behavior is likely. Labile affect and poor self control were reported on testing. His strong energy level can result in disinhibition, recklessness, and poor judgment.

Interpersonal functioning on testing reflects that Mr. Hill described himself as being a very outgoing, extroverted, sociable individual with strong social needs. His excessive needs for attention can be hard to fill and can result in much attention seeking behavior and much frustration. Moderate passive aggressive tendencies were evident on testing, as Mr. Hill described himself as a negative, stubborn individual who may covertly sabotage others by procrastinating, complaining, not completing tasks, and by engaging in "yes, but" behaviors.

Testing suggests a dominant individual who needs to be in charge of situations, and who is very competitive and has a strong focus on winning. Persons with similar scores can occasionally be demanding and manipulative, and typically avoid negative issues out of fear of rejection. While

Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 13

strong social needs exist, most relationships are likely to be kept superficial. Although a need to be mildly dependent on others exists, testing suggests that Mr. Hill can at times be independent. Results indicate that Mr. Hill may often ignore social rules and do as he pleases without feeling a sense of obligation or responsibility to others. Underlying personality features can interfere with his ability to maintain long term relationships.

Personality functioning on testing reflects significant Borderline features. These features indicate that Mr. Hill has poor ego strength and does not have a well developed sense of identity. He is likely to react to his conflicted thoughts and feelings in unpredictable, situationally determined ways. Dramatic behavioral outbursts, capricious up and down mood swings, and dependency/independent cycles are typical of this profile. While strong needs for love and nurturance are present, persons with similar scores tend to develop Hostile Dependent relationships and manipulatively attempt to control others through extreme tactics that may include suicide attempts. A series of transient, conflicted relationships are typical among individuals with similar scores. Strong self defeating personality patterns were present on testing suggesting that Mr. Hill is likely to exhibit a pattern of self sabotage and failure.

Additional to the above, personality testing indicates the presence of character pathology to include dysfunctional personality patterns that can cause interpersonal and intrapsychic problems that may interfere with the ability to function productively. Testing indicates significant Narcissistic, Antisocial, and Passive Aggressive features that are likely to effect daily functioning. Persons with a similar profile tend to be self centered, grandiose, and irresponsible individuals. Such individuals are typically unreliable, reject obligations, and do not consistently follow societal norms. Results suggest that Mr. Hill is on guard and over reactive to failure and imperfection, as they easily deflate a grandiose front. Among persons with a similar profile, hostile codependent relationships are likely as they find fault as a defense against intimacy and commitment. Actions are often rationalized through self deception and distortion of facts. Maladaptive behavior is most likely rooted in active irresponsible thinking, sense of entitlement, and rebelliousness.

## CRIMINAL CHARACTERISTICS

On the SASSI III, Mr. Hill described having almost no personality features that are typically found in criminal populations. Mr. Hill's overall score on a discriminant function analysis of Jesness Inventory results showed mild generalized delinquent tendencies, and an above average underlying global predisposition to break social rules and act out antisocially. Mr. Hill depicted himself on testing as having a typical awareness of appropriate social expectations and norms. He does not have a value system typical of criminal populations. His values are unlikely to overly condone or contribute to any maladaptive behavior. Mr. Hill described himself on the Jesness as having adequate maturity and coping skills. He is likely to have typical

Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 14

insight and empathy, and a normal awareness of how his behavior affects others. He did not report significant authority conflicts and appears able to relate to authority figures.

Average levels of repression were reported on the Jesness, as Mr. Hill described having adequate guards against directly experiencing his emotions and being overwhelmed by his feelings on the Jesness. Average tendencies to consciously deny problems and suppress disturbing thought were reported. On testing, Mr. Hill reported mild tendencies to withdraw. While this could in part be a reaction to his behavior and its consequences, his emotions or poor social skills are likely to be a root cause of and key trigger to his acting out behavior. The average levels of social discomfort and self-consciousness reported on the Jesness are not likely to adversely influence Mr. Hill's behavior. The average level of anger and/or discomfort with angry feelings seen on the Jesness are very unlikely to trigger acting out. Although indicators of typical criminal motivation were all well within the normal range, Mr. Hill's negative self image leads him to focus on his problems. Internal tension can build until he acts negatively to reduce repressed feelings, especially when unmet dependency needs are raised. Acting out may occur as a way to deal with underlying emotional conflict.

Mr. Hill's criminal history reflects an arrest For Other Jurisdiction (U.S. Army) in Colorado Springs on 01-03-04. This appears to be regarding Mr. Hill's AWOL. He was found guilty on a misdemeanor Theft- $110-$500 charge in Colorado Springs on 02-06-06, and sentenced to one year of unsupervised probation. Mr. Hill reported that this case involved him purchasing stolen items. He indicated that he successfully completed his probation sentence in El Paso County. On 05-15-11, Mr. Hill was arrested in Colorado Springs on a misdemeanor Domestic Violence charge of Harassment. He explained that this charge occurred as a result of a verbal threat he made to Misty Lucero (as previously described in the Stability of Functioning section of this report). Mr. Hill was charged in Colorado Springs with misdemeanor Domestic Violence charges of Criminal Mischief (Property Damage) $500 or Less and (Crime Against Person) Harassment-Obscene Language/Gesture. Criminal History reflects that both of these charges were dismissed by the Court. On 05-01-14, Mr. Hill was arrested by the El Paso County Sheriff's Office and charged with fifty-one felony counts of Sexual Exploitation of a Minor-Via Telecom and Sexual Exploitation of a Child-Poss. Material. He was convicted on a count of Criminal Attempt to Commit Sexual Exploitation of a Child in this case. Mr. Hill was arrested on index offense charges prior to being sentenced in the El Paso County case.

## REPORTED INSTANT OFFENSE BEHAVIOR AND RELATED EVENTS

Discovery material related to Criminal Case No. 15-cr-00204-RBJ-1, as contained in the Plea Agreement, reflects that on 02-11-15, Jane Doe (pseudonym for adult female victim) reported an incident of extortion to the Colorado Springs Police Department. She reported that she was

Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 15

being extorted to send sexually explicit depictions to Mr. Hill, along with other individuals associated with Mr. Hill who she identified as another adult female, Holley Bee, another adult female, Sara Greenwalt, an adult male, Nick Wise, and an adult male, Steven Cross, who claimed to be a police officer.

The victim reported that she was communicating with Mr. Hill via text messaging and indicated that Mr. Hill sent her unwanted child pornographic images via email. When she instructed Mr. Hill to stop she stated that she was then told by Mr. Hill that if she reported to the police, she would be arrested for being in possession of child pornography. The victim reported that Mr. Hill sent her video depicting child pornography and told her that the video depicted him sodomizing his ten month old daughter with his penis. Jane Doe was later contacted by "Steven Cross" who represented himself to be an officer in the Internet Crimes Against Children Unit, who told her that he was aware she was in possession of child pornographic images and that he was going to issue a warrant for her arrest. "Steven Cross" asked the victim to take sexually explicit images of herself and others, including a "little girl, three years or younger and I want you to piss on her, finger her, and make her cry." Although the victim did not follow through with the request to produce child pornography, she did send "Steven Cross" sexually explicit videos in which she was depicted. The victim ultimately reported these events to the police and was instructed by the police to discontinue all communication with the suspects.

Jane Doe later reported to the police that she was continuing to receive emails from "Steven Cross." Among those emails were messages stating, "I'm not entirely sure what happened to you but you should probably find some place to go for a while" and "would you like links to where your pictures and videos are posted online? The one with you drinking your piss has 1200+ views so far. See you soon!" Mr. Hill pled guilty to one count of Criminal Attempt to Commit Sexual Exploitation of a Child in this case on 01-27-15 in El Paso County District Court.

The investigating Colorado Springs Police detective examined Google records of "Steven Cross" and observed that his account had sent twenty-nine emails to "rhiannon.carnahan@gmail.com" and to "rhiannon.carnahan@yahoo.com." Each email contained a video attachment, twenty-seven of which depicted prepubescent minor females either involved in a sexual act with an adult male/female, or in which the minor females were engaged in sexual activity with themselves.

The investigating detective obtained a search warrant for Mr. Hill's residence and conducted an interview with Mr. Hill at the time of the execution of the search warrant on 04-21-15. During this interview, Mr. Hill admitted that he had created fake personas on KIK and to exchanging child pornographic images with other individuals. Mr. Hill advised that he used KIK usernames associated with "Nick Wise," "Steven Cross," his own name "Tyler Hill," and other names that he was unable to recall. He indicated having used a random picture of a police officer for his "Steven Cross" KIK account profile. Mr. Hill stated that he used the police officer persona to

Mental Health Sex Offense Specific Evaluation
**Re: Hill, Brandon T.**
Page 16

scare Jane Doe and acknowledged that he represented himself to be all of the fake personas to Jane Doe.

Mr. Hill also reported that he engaged in this same type of contact with an adult female he knew as Rhiannon Carnahan. He reported having sent child pornographic images to her email account at Rhiannon.carnahan@gmail.com and that she had sent him child pornography using KIK. Mr. Hill stated that he believed Ms. Carnahan was sexually molesting a three to four year old female to whom she had access, and indicated that she had sent him live images on KIK chats. Mr. Hill reported that he did not know Ms. Carnahan personally, but had met her on Facebook. He consented to give investigators access to his Dropbox account where he kept the sexually abusive images he had received from Ms. Carnahan. During the examination of these images the investigating detective observed a minor age female engaged in sexually explicit acts. These images depicted oral sex between the minor age female and an adult female, as well as images of an adult female inserting a sex toy into the minor's vagina. Further investigation revealed the adult female depicted in the images to be Rhiannon Carnahan and the depicted minor female to be four years of age.

When interviewed by law enforcement, Ms. Carnahan reported that she sent "Steven Cross sexually explicit images of herself and the four year old female because he requested them and she was afraid of what the repercussions might entail if she did not. She indicated that "Steven Cross" told her that if she did not do what he asked, she would be in trouble for possessing the child pornography he sent her. Ms. Carnahan further indicated that "Steven Cross" forced her to send the images to other individuals. She also reported having sent the images to "Nick Wise," whom she did not think was associated with "Steven Cross." Ms. Carnahan indicated that she had been engaged in the above described communication beginning in February 2015 and continuing until April 21, 2015.

Investigation further reflects that in March 2015, Mr. Hill initiated contact via online communication with Mary Smith (pseudonym for eighteen year old adult female victim). This communication initially involved Mr. Hill hiring Ms. Smith for acts of prostitution. The communications eventually moved to text messaging and Mr. Hill inquiring whether Ms. Smith would be willing to engage in sexual contact with a minor female and what she would charge for engaging in sexual contact with a minor age female. Mr. Hill sent Ms. Smith sexually explicit images of females he represented to be fourteen and fifteen years of age to see if she would engage in sexual contact with one of those females. He also sent her a picture of the face and upper torso of the four year old female depicted in sexually explicit images with Ms. Carnahan and communicated to Ms. Smith that the minor in the photograph is "only 3" and asks "3 too young?" Mr. Hill has stipulated to a Plea Agreement in the United States District Court in Criminal Case No. 15-cr-00204-RBJ-1, but has not yet been sentenced.

Discussing at the time of current clinical interviewing the events described above, Mr. Hill